IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 72734-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER DENYING MOTION |
| v. | ) | FOR RECONSIDERATION |
| | ) | AND WITHDRAWING AND |
| YUSUF HAISE SHIRE, | ) | SUBSTITUTING OPINION |
| | ) | |
| Appellant. | ) | |

Appellant Yusuf Haise Shire filed a motion to reconsider the opinion filed on January 30, 2017. Respondent State of Washington filed an answer to the motion. The panel has determined that the motion should be denied, but the opinion filed on January 30, 2017 shall be withdrawn and a substitute opinion filed. Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is denied and the opinion filed on January 30, 2017 shall be withdrawn and a substitute opinion shall be filed.

DATED this 21st day of August , 2017.

_Schindler, J._

_Verellen, J._

_Cox, J._


IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72734-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| YUSUF HAISE SHIRE, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 21, 2017 |

SCHINDLER, J. — The State charged Yusuf Haise Shire and Mohamed Ibrahim with assault of Mardillo Barnes, Vincent Williams Jr., and Berket Kebede in the first degree while armed with a firearm and unlawful possession of a firearm in the first degree. The jury convicted Shire of three counts of the lesser included offense of assault in the second degree while armed with a firearm and unlawful possession of a firearm in the first degree. Shire contends he is entitled to dismissal of the convictions because double jeopardy barred the second trial. In the alternative, Shire seeks reversal on the grounds that the court erred in denying his motion to suppress custodial statements and his request for a material witness warrant. Shire also claims his attorney provided ineffective assistance of counsel by failing to timely request a material witness warrant. In the linked case, State v. Ibrahim, No. 72753-2-I (Wash. Ct. App. Aug. 21, 2017), we considered and rejected the argument that double jeopardy barred

retrial and that the court erred in denying the request to issue a material witness warrant. We also reject Shire's argument that the court erred in denying the motion to suppress and conclude Shire does not meet his burden of showing ineffective assistance of counsel.[1] We affirm the jury convictions but remand to correct a scrivener's error in the judgment and sentence.

Motion to Suppress Custodial Statements

Shire contends the court erred by admitting custodial statements he made to police. Shire asserts the statements were made in response to custodial interrogation. The State asserts the statements were not the result of an interrogation.

Under the Fifth Amendment, "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In Miranda v. Arizona, 384 U.S. 436, 473-74, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Supreme Court adopted "[p]rocedural safeguards" to protect the privilege and require warnings before questioning an individual in custody.[2] If an individual invokes his right to remain silent, the police must cease questioning. Miranda, 384 U.S. at 473-74; State v. Cross, 156 Wn.2d 580, 619, 132 P.3d 80 (2006). However, statements made "freely and voluntarily" are not barred by the Fifth Amendment. Miranda, 384 U.S. at 478.

> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police

---

[1] The facts are more fully set forth in the linked case, Ibrahim, No. 72753-2-I, and will be repeated only as necessary.

[2] The police must clearly inform the suspect

that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Miranda, 384 U.S. at 478-79.

2

> without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Miranda, 384 U.S. at 478.

In Rhode Island v. Innis, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980), the Supreme Court addressed the meaning of "interrogation" under Miranda. The Court concluded "interrogation" under Miranda "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301.[3]

> We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Innis, 446 U.S. at 300-01;[4] see also In re Pers. Restraint of Cross, 180 Wn.2d 664, 685, 327 P.3d 660 (2014). In determining whether any words or actions of the police are reasonably likely to elicit an incriminating response, we focus "primarily upon the perceptions of the suspect, rather than the intent of the police." Innis, 446 U.S. at 301; see also Cross, 180 Wn.2d at 685; State v. Sargent, 111 Wn.2d 641, 651, 762 P.2d 1127 (1988).

---

[3] Footnote omitted.
[4] Footnote omitted.

We review a trial court's findings of fact following a CrR 3.5 hearing for substantial evidence and review de novo whether the findings support the conclusions of law. State v. Radcliffe, 164 Wn.2d 900, 907, 194 P.3d 250 (2008); State v. Broadaway, 133 Wn.2d 118, 131, 942 P.2d 363 (1997); State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). In determining if police engaged in "interrogation" for Miranda purposes, "we defer to the trial court's findings of fact but review its legal conclusions from those findings de novo." Cross, 180 Wn.2d at 681. Unchallenged findings of fact are verities on appeal. State v. Lorenz, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).

There is no dispute Shire was in custody. The unchallenged findings of fact state:

> 1. THE UNDISPUTED FACTS: The defendants were stopped in a white 1996 Toyota Camry at approximately 1:40 AM on May 18, 2013 after . . . Seattle Police Department officers learned that the Toyota Camry that was suspected to be involved in a shooting that had just occurred. After a felony stop was conducted by several Seattle Police Department officers, all of the occupants were ordered out of the Camry.

There is no dispute Officer Shelley San Miguel read Shire his Miranda rights. Shire stated he understood his rights and "he did not want to speak about the shooting." The unchallenged findings establish Officer San Miguel did not ask Shire any questions. The unchallenged findings of fact state:

> Officer Shelley San Miguel arrived at the location of the stop just as defendant Shire was being removed from the vehicle. The officer contacted defendant Shire, placed him into handcuffs, and walked him back to Officer Elias's patrol vehicle. There, the [officer] apprised defendant Shire of his Miranda warnings. Defendant Shire indicated that he understood, and advised the officers that he did not want to speak about the shooting. He was not asked any further questions about the incident.

But the unchallenged findings of fact establish that "Officer San Miguel did, however, inform defendant Shire of the reason for his arrest." Officer San Miguel told Shire that "the vehicle was a possible suspect vehicle in an incident a few blocks away" and that "we had stopped the vehicle and were detaining all the occupants inside while we conduct an investigation." Shire "then stated that he was not involved in anything and had just been picked up by his friends."

Officer San Miguel was the only witness to testify at the hearing on the admissibility of the custodial statements made by Shire. Officer San Miguel testified that the statement she made to Shire about "why he was being stopped" was not "framed . . . as a question."

The State argued the statements were admissible. The State asserted the testimony established Officer San Miguel read Shire his Miranda rights and Shire exercised his right not "to answer any of the questions." And "after that point," all Officer San Miguel did was inform Shire of "the reason for his arrest."

> All the Officer did after that point was inform Mr. Shire the reason for his arrest; that being that they were investigating some suspicious circumstances involving a shooting. And as the Officer noted, that statement[ ] wasn't intended to — intended to elicit a response, it wasn't a question. It certainly wasn't coerced in any manner. And — and really, the Officer didn't believe that there was going to be any response made by Mr. Shire to that statement.

Shire's attorney argued the question of whether the statement of Officer San Miguel was interrogation is an objective not a subjective determination.

> Innis clearly defines interrogation under Miranda as not only express questioning, but also words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily on the perceptions of the suspect rather than the intent of the police. . . .

[T]he standard is an objective one, focusing on what the officer knows or ought to know will be the result of his words and acts. The subjective intentions of the officer are not at issue.

The court ruled Shire was not subject to interrogation and the statements he made were admissible.

When it comes to the statements of Mr. Shire to Officer San Miguel, the issue here is whether Officer San Miguel's statement basically articulating for Mr. Shire the reason for his detention, whether or not that is objectively designed to elicit statements in violation of Miranda. In this particular case I think the statements were innocuous, they were informative only, they weren't intended or designed, or objectively requiring a response on behalf of Mr. Shire.

The written conclusions of law state, in pertinent part:

Statements by Defendant Yusuf Shire: When defendant Shire was taken into custody, he was appropriately apprised of his Miranda warnings and exercised his right to remain silent. Defendant Shire was not questioned thereafter. Officer San Miguel, however, did make an innocuous statement about the reason for the arrest. This statement was not a question, nor was it intended to elicit a response from defendant Shire. As a result, defendant Shire's statement made in response does not implicate the protections afforded by Miranda. Defendant Shire's response was spontaneously and voluntarily made and is admissible for CrR 3.5 purposes.

Shire challenges the conclusion of law on the grounds that the court erred in focusing on Officer San Miguel's subjective intent rather than on the objective determination of whether Officer San Miguel should have known that telling Shire why he was under arrest was likely to elicit an incriminating response. The record does not support Shire's argument.

The written conclusions of law specifically incorporate by reference the "oral findings and conclusions." The court's oral ruling clearly shows the court applied the correct standard in determining whether Officer San Miguel's statement was objectively likely to elicit an incriminating response. The court expressly states that it considered

6

"whether Officer San Miguel's statement basically articulating for Mr. Shire the reason for his detention, whether or not that is objectively designed to elicit statements in violation of Miranda."[5] The court ruled the officer's statements "were informative only, they weren't intended or designed" to "objectively" require a response from Shire. The record also does not support the argument that telling Shire why he was under arrest was reasonably likely to elicit an incriminating response.

Because the court used an objective standard in concluding Shire's statement to Officer San Miguel was not the product of interrogation, the court did not err in admitting the statement Shire made to police. See United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984).

Ineffective Assistance of Counsel

Shire contends his attorney provided ineffective assistance of counsel by failing to timely request a material witness warrant for Kebede.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). "Ineffective assistance of counsel is a fact-based determination, and we review the entire record in determining whether a defendant received effective representation at trial." State v. Carson, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015); Grier, 171 Wn.2d at 34.

---

[5] Emphasis added.

To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. Grier, 171 Wn.2d at 32-33. If a defendant fails to establish either prong, we need not inquire further. Strickland, 466 U.S. at 697; State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

To establish deficient performance, Shire has the heavy burden of showing that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Deficient performance is performance falling 'below an objective standard of reasonableness based on consideration of all the circumstances.' " State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

An appellate court must indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the presumption of a legitimate trial strategy. Strickland, 466 U.S. at 689. There is a strong presumption of effective representation of counsel, and the defendant has the burden to show that based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. McFarland, 127 Wn.2d at 335-36.

As the Supreme Court explained in Strickland:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134[, 102 S. Ct. 1558, 71 L. Ed. 2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

8

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. Louisiana, [350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)].

Strickland, 466 U.S. at 689.

To rebut the presumption that counsel's performance was reasonable, Shire "bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.' " Grier, 171 Wn.2d at 42[6] (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)); State v. Humphries, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014); McFarland, 127 Wn.2d at 335-36.

Shire cannot show the decision not to request a material witness warrant before the last day of trial fell below the objective standard of reasonableness. The second trial began on September 3, 2014. The court granted the State's motion to amend the information to add the charge of assault in the first degree of Berket Kebede while armed with a firearm. The State endorsed Kebede as a witness and on September 4, issued a subpoena to appear and testify at trial.

During pretrial motions, Shire's attorney addressed the "pros and cons" of calling Kebede as a defense witness in the first trial. "Certainly the concerns that I had were there were a number of jail calls, as the State has pointed out, between my client and Mr. Kebede" and allegations of witness tampering.

[T]here have been allegations of — of witness tampering. I know there's a letter in evidence that the prior trial court permitted, that I anticipate will be permitted to be used at this trial, regarding that alleged witness tampering.

---

[6] Emphasis in original.

On September 11, the prosecutor told the court that because "we're not able to locate [Kebede]," the State did not intend "at this point to introduce any of the jail calls" Shire "made to Mr. Kebede."

> [W]e're not able to locate him, so it doesn't — we don't anticipate him being called as a witness — calling him as a witness. They — some of these calls could potentially be used as impeachment evidence against him.

Shire's attorney questioned the State's efforts to present Kebede as a witness at trial and stated Shire planned to subpoena Kebede to testify.

> I'm going to prepare a subpoena and direct my investigator to try to serve [Kebede]. However the resources that we have obviously pale in comparison to those at the State's disposal. I — I am making, and will make efforts to get a subpoena for Mr. Kebede. My understanding is the State hasn't subpoenaed him, and . . . I will let the State say what efforts. But they've obviously added him as a victim; believe that they endorsed him as a witness. So we certainly have the expectation that Mr. Kebede would be present at trial.

The prosecutor told the court the State served a subpoena but was uncertain "whether there was any return of service" and, therefore, could not in "good faith" request a material witness warrant.

> I can tell that I've asked Detective Janes and they're — part of the issue with regards to why the State hasn't asked for a material witness warrant is usually the detectives need somewhere to start, and we don't have that. So that would be the reason why we haven't asked for one. I mean — and I don't even know if he's properly served to even in good faith ask for one. So that would be the only State's issue at this point.

The State planned to conclude its case in chief on September 16. On September 16, Detective Thomas Janes testified about the attempts he made during the trial to locate Kebede, including speaking to Kebede's mother. Detective Janes said Kebede's mother talked to Kebede "earlier in the week" but she did not provide "any information of his location." During his testimony, Detective Janes read a letter Shire wrote while in

jail. The letter states the case against him turns on the testimony of the victims and if "the victims don't come," he will be convicted of only unlawful possession of a firearm.[7]

During the recess, the court asked the defense for an update—"where we'll go next." Shire's attorney told the court he planned to call the defense investigator to rebut the implication that Shire had paid Kebede to leave town and not testify. The court ruled:

> Well he can certainly testify to having contact with Mr. Kebede in December of 2013. He'd not relocated to California where he was receiving a thousand dollars a month or anything like that. He was here in King County, Washington in December of 2013.

Shire's attorney asked the court to "give the defense until tomorrow morning" to locate Kebede. The attorney told the court that he had made "efforts to find him." The attorney said he left Kebede "a message saying that if — if he was going to testify on behalf of the defense . . . that we would need him here tomorrow morning." The prosecutor said in that event, the State planned to call Kebede as a witness. The court ruled the State could "either rest and let the defense call [Kebede], or you can call him and see where that takes us."

---

[7] The letter states, in pertinent part:

What's up, Samira? . . . [M]y case is looking kind of bad right now that they pushed it back 'til October. And they got my prints on the gun. But really, my case relies on the victims. If the victims don't come, I will get charged with the gun. That's why I'm stressing really. So far they can't get a hold of none of the victims or the witness.

But yeah, I need you . . . to take Oh Boy out of town to Cali and give him like one thousand a month to live until my shit is over with 'cause if they find him and he comes, I'm cooked. Bad. That's why I need you to do that, because with him I . . . should be good. 'Cause they are — are looking for him.

The court asked Shire's attorney what were "the chances of [Kebede] coming in tomorrow morning." Shire's attorney responded that "from my perspective, . . . they're slim."

> I've left messages, [the defense investigator] went out and talked to his mom that — basically what we conveyed to him was the case will be over tomorrow. I — I have no idea if he's going to show up.

At that point, Ibrahim's attorney interjected and for the first time disclosed that she received a call from Kebede during the noon recess that day, and Kebede told her he "would be here at 8:30" on September 17.

> [IBRAHIM'S ATTORNEY]: And your Honor, this is perhaps why I need to then disclose this. And that is just at the lunch hour, I did get a call from Mr. Kebede —
> THE COURT: Okay.
> [IBRAHIM'S ATTORNEY]: — in response to my telephone calls.
> THE COURT: Uh huh.
> [IBRAHIM'S ATTORNEY]: Mr. Kebede — I told him he would need to be here at 8:30 tomorrow morning.
> THE COURT: Yeah.
> [IBRAHIM'S ATTORNEY]: He indicated he would be here at 8:30.

The next morning, Shire's attorney told the court that Kebede called him at approximately 7:45 a.m., Kebede acknowledged receiving the subpoena from the defense, and Kebede said he "would be here at 9:00" a.m. The court ruled in the meantime, Shire could present the testimony of the defense investigator.

> Well we can bring in the jury, the State can rest. We can hear from [the defense investigator], and that will give us until 9:30 or 9:40 to see if Mr. Kebede should appear. If he has not appeared, then would you be resting?

Shire's attorney told the court that if Kebede did not appear, he would ask the court to issue a material witness warrant.

> [SHIRE'S ATTORNEY]: I — I think the only other thing that I would have would be a motion for material witness warrant. Unfortunately the

service information is, as I've described to the Court, and — and that's all that I can offer the Court in terms of a basis for that.

THE COURT: Okay.

[SHIRE'S ATTORNEY]: But — but I — I think I would be obliged to ask.

THE COURT: Okay. And I think I would probably, in light of the timing, be obliged to decline that —

[SHIRE'S ATTORNEY]: That's not a surprise.

THE COURT: — invitation. You know, I might have a week ago, which is, I think, what Detective Janes might have had the impression had occurred. There was not a warrant for Mr. Kebede?

The prosecutor told the court there "actually is a warrant for Mr. Kebede's arrest" in municipal court.

When Kebede did not appear by 9:40 a.m., Shire's attorney asked the court to issue a material witness warrant for Kebede. The court denied the request to issue a material witness warrant as untimely.

Shire cannot show deficient performance in failing to request a material witness warrant before September 17. The record does not support the argument that Shire should have requested a material witness warrant for Kebede on September 11.

At the beginning of the second trial, the State filed an amended information adding a charge of assault in the first degree of Kebede. The State endorsed Kebede as a witness and issued a subpoena on September 4. On September 11, the prosecutor told the court the State did not plan to call Kebede and could not in "good faith" request a material witness warrant because the requirements of CrR 4.10 were not met. CrR 4.10(a) states, in pertinent part:

> The [material witness] warrant shall issue only on a showing . . . that
> (1) The witness has refused to submit to a deposition ordered by the court pursuant to rule 4.6; or
> (2) The witness has refused to obey a lawfully issued subpoena; or
> (3) It may become impracticable to secure the presence of the witness by subpoena.

The record does not show that on September 11, Kebede "refused to obey a lawfully issued subpoena" or that the defense could not "secure [his] presence" by issuing a subpoena.[8] The record shows that on September 11, Shire's attorney planned to subpoena Kebede and call him to testify. The record shows Kebede was in contact with the defense attorneys and received the defense subpoena to testify. Kebede assured defense counsel on September 16 and on September 17 that he would comply with the defense subpoena and come to court to testify the morning of September 17. Kebede told Ibrahim's attorney on September 16 that he planned to come to court at 8:30 a.m. on September 17. Shire's attorney talked to Kebede the morning of September 17 and confirmed he planned to come to court and testify. There was no justification to request a material witness warrant under CrR 4.10 until September 17.

The record also shows legitimate strategic reasons not to request a delay or continuance of the trial.[9] Barnes testified that he knew Shire and that Shire was not involved in the shooting. During cross-examination, Barnes admitted he previously testified that he did not "see who did the shooting." Barnes testified that he knew Shire but said he did not remember seeing or talking to Shire that evening.

Further, there is no dispute the State would have impeached Kebede's credibility. The State would have introduced evidence that the jail calls showed Kebede was in

---

[8] CrR 4.10(a)(2), (3).

[9] Washington v. Smith, 219 F.3d 620 (7th Cir. 2000), and Young v. Washington, 747 F. Supp. 2d 1213 (W.D. Wash. 2010), are distinguishable. In Smith, the court held defense counsel "had no semblance of a tactical reason for the delay, nor can we think of one for him." Smith, 219 F.3d at 630. In Young, the attorney " 'stated on the record that his failure to serve a subpoena was not a strategy or tactic.' " Young, 747 F. Supp. 2d at 1219 (quoting State v. Young, 132 Wn. App. 1037, 2006 WL 1064122, at *4).

regular contact with Shire while he was in jail; that unbeknownst to the State, Kebede was in court during the first trial; and that Kebede did not come forward until after Williams testified. In addition, the State would have questioned Kebede about the letter Shire wrote to him.

Because Shire cannot establish deficient performance, his claim of ineffective assistance of counsel fails. Strickland, 466 U.S. at 697; Hendrickson, 129 Wn.2d at 78; Carson, 184 Wn.2d at 229.

Statement of Additional Grounds

In his pro se statement of additional grounds, Shire claims his attorney provided ineffective assistance of counsel by not asking Williams about being "pressured into testifying against me" and about the information Williams obtained after the shooting "from friends and family." Shire cannot show ineffective assistance of counsel. Shire's attorney engaged in a lengthy cross-examination of Williams, and we presume decisions regarding the extent of cross-examination are strategic. See In re Pers. Restraint of Brown, 143 Wn.2d 431, 451, 21 P.3d 687 (2001); State v. Stockman, 70 Wn.2d 941, 945, 425 P.2d 898 (1967).[10]

Scrivener's Error in Judgment and Sentence

Shire contends the judgment and sentence incorrectly lists assault in the first degree instead of assault in the second degree. The State concedes the judgment and sentence mistakenly lists assault in the first degree. We accept the State's concession

---

[10] Shire also contends that because Kebede did not testify, he was deprived of his constitutional right to confront Kebede and present a defense. Because appellate counsel "addressed" this argument, we need not address Shire's argument. RAP 10.10(a); State v. Thompson, 169 Wn. App. 436, 493, 290 P.3d 996 (2012) (alleged error thoroughly addressed by counsel not proper matter for statement of additional grounds).

as well taken and remand to correct the judgment and sentence. <u>In re Pers. Restraint Petition of Mayer</u>, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005).

We affirm the jury convictions but remand to correct the scrivener's error in the judgment and sentence.

WE CONCUR: