# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59691-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KEVIN MICHAEL BLACKWOOD, | |
| Appellant. | |

PRICE, J. — Kevin M. Blackwood appeals his conviction for felony violation of a no contact order (VNCO)—domestic violence (DV), arguing that he was denied his right to a unanimous jury verdict. We disagree and affirm.

## FACTS

In October 2023, Blackwood was living with his mother, Diane Blackwood, despite a no contact order protecting Diane.[1] On October 30, Diane called 911 because Blackwood was acting erratically. Police arrived and verified the no contact order between Blackwood and Diane. Police then arrested Blackwood for VNCO.

The State charged Blackwood with one count of felony VNCO-DV with a charging period of on or between August 1, 2023, and October 30, 2023.

---

[1] Because Diane and Kevin Blackwood have the same last name, we refer to Diane by her first name for clarity.

At trial, Diane testified that Blackwood had been living with her periodically prior to his arrest on October 30. At the time, Blackwood had no other place to live besides in his girlfriend's van. Diane explained that she knew that a no contact order was in place because she was present in court when the order was imposed. However, she let Blackwood come live with her

> [b]ecause I felt sorry for him, and I thought that if I could just give him one more chance to go get a job and have somewhere to sleep at night, that it would—he would get going on his life again.

2 Verbatim Rep. of Proc. (VRP) at 142.

Diane testified that things were not going well leading up to Blackwood's arrest. Blackwood took Diane's phone, went through her things, and acted erratically. On October 30, Diane called the police because Blackwood was pacing through the apartment and saying things that did not make any sense. While waiting for the police, Diane left the apartment and went to the apartment manager's office. When the police arrived, Diane let them into her apartment. The police contacted Blackwood in the living room of the apartment.

During cross-examination, Diane indicated that she had started having contact with Blackwood around August:

> [Defense Counsel:] Okay. Now, Mr. Blackwood's your son, and you had—you had indicated that around August, he had been living in a van, right?
>
> [Diane:] Yes.
>
> [Defense Counsel:] And you had allowed him to come to your house to do things like wash his clothes?
>
> [Diane:] Yes.
>
> [Defense Counsel:] And shower and get some food in his system?
>
> [Diane:] Yes.

2 VRP at 153-54.

Diane also testified that she had once attempted to have the no contact order rescinded. But the court denied her request. Diane had told Blackwood that she was attempting to have the no contact order rescinded, but she never told him that the order had actually been rescinded.

The officers who responded to Diane's apartment testified that on October 30, they were dispatched for a mental health welfare check. When the officers arrived at the apartment, they learned from Diane that there was a no contact order in place. After confirming the order, the officers arrested Blackwood inside Diane's apartment. Blackwood told the officers he thought the no contact order had been rescinded.

The parties agreed to a stipulation, which was presented to the jury, that specified Blackwood's past convictions as of the date of his arrest:

> That on or about *October 30, 2023*, beyond a reasonable doubt, the defendant has twice been previously convicted for violating the provisions of a court order issued under Revised Code of Washington chapters 10.99 or 26.50.

Clerk's Papers (CP) at 45 (emphasis added) (boldface omitted).

After the State rested, the trial court gave a to-convict instruction that provided the elements of felony VNCO and identified the three-month charging period from the information:

> To convict the defendant of the crime of violation of a court order, each of the following five elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That during the period between the 1st day of August 2023 and the 30th day of October, 2023, there existed a no contact order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a provision of this order;

(4) That the defendant has twice been previously convicted for violating the provisions of a court order; and

(5) That the defendant's act occurred in the State of Washington.

CP at 54. Neither party proposed, and the trial court did not give, a unanimity instruction, also known as a *Petrich*[2] instruction.

During the State's closing argument, in the course of explaining to the jury the three-month time frame in the to convict instruction, the State emphasized the date of October 30:

> So the first question is did this happen during that time period. And it doesn't have to be the entire time period. It's just on or about those—that timeframe. And we know that timeframe because the mom, Diane, said that he came and started staying with her sometime in early August. And he was homeless, I guess, is one way to look at it. He was living with his girlfriend in a van and so forth, and there were some issues. And mom let him come and stay with her. We'll get into some of the reasons why maybe that wasn't a good idea, but mom let him stay. But we know that that's the time frame of the beginning of that.
>
> We also know that October 30th was involved in this too because that's when the police showed up. And the police write reports. And they may not remember all the details of all the reports, of all the calls they go to, but that's why they write reports. So they know it was on October 30th of '23 that they arrived and they found the defendant inside of his mom's apartment.

3 VRP at 201. When the State discussed the third element—whether the defendant "knowingly violated a provision of this order"—it primarily focused on the knowledge requirement, not the fact of violation. In other words, the focus was whether Blackwood *knowingly* violated the order, not whether Blackwood actually resided with Diane. CP at 54. Nevertheless, the State did specifically argue that Blackwood violated the no contact order by being inside Diane's apartment even though she invited him there:

---

[2] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

And this case, what we have is we have him inside his mother's residence. This isn't like a mistake. It's not some accident that this is occurring. This is an intentional violation of what that order says. He's not to have contact. And the confusing part—I know some of you are maybe confused. Well, the mom let him come and stay there, so why is this a knowing violation of that? Well, there's an instruction that addresses that. And it says that it's not a defense to violation of a no-contact order if you're invited to violate the order.

And that's what happened here. Mom invited him. Mom felt sorry for him, as mothers do, and we can't blame our mothers for that. That's a maternal instinct, I would submit to you, and she knew that was a mistake. She basically said as much on the stand. And she knows that he can't live with her anymore because of the things that happened. And we are not going to get into all those things because that's not part of our case here, but just because mom let him do that, let him violate the order, doesn't mean that he's not responsible for what happened because he is the one that's liable. His name is on that order.

3 VRP at 205-06.

Similarly, defense counsel spent little time in their closing argument on whether Blackwood violated the order by being in contact with Diane. Instead, like the State, defense counsel argued that the outcome of the case was determined by whether Blackwood *knowingly* violated the order.

In rebuttal, the State again specifically called attention to Blackwood's actions on October 30:

This case is about whether or not on that time period, *specifically October 30th*, whether he was in violation of that order. And the State has proven that he was.

3 VRP at 225 (emphasis added).

The jury found Blackwood guilty of felony VNCO. The jury also found that Blackwood and Diane were family or household members. The trial court imposed 45 months' confinement.

Blackwood appeals.

ANALYSIS

Blackwood argues his right to a unanimous jury verdict was violated because there was evidence that Blackwood had contact with Diane on multiple occasions and the jury was not instructed it had to unanimously determine which contact occurred. We disagree.

Both the federal and state constitutions guarantee criminal defendants the right to a unanimous jury verdict. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. When the State presents evidence of several acts that could form the basis of one charged count, the State must either elect the particular criminal act on which it will rely for conviction, or the trial court must instruct the jury that all members must agree that the State proved the same underlying criminal act beyond a reasonable doubt in order to ensure jury unanimity. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). A constitutional error occurs if the State fails to elect and the trial court fails to instruct the jury on unanimity because of the "possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988).

An unanimity instruction is only required when the State fails to elect the act it will rely on for conviction. *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015). To be an effective election, the State must " 'tell the jury which act to rely on in its deliberations.' " *Id.* (quoting *Kitchen*, 110 Wn.2d at 409). "[A]n election can be made by the prosecuting attorney in a verbal statement to the jury as long as the prosecution 'clearly identifie[s] the act upon which' the charge in question is based." *Id.* (second alteration in original) (quoting *State v. Thompson*, 169 Wn. App. 436, 474-75, 290 P.3d 996 (2012)).

Here, the State ultimately made an election. Although the State made a general reference to the entire charging period during its closing argument, it settled on making an explicit reference during its rebuttal closing argument to Blackwood being in Diane's apartment on October 30 when he was arrested. *See* 3 VRP at 225 ("This case is about whether or not on that time period, *specifically October 30th*, whether he was in violation of that order. And the State has proven that he was." (emphasis added)). The last thing the State told the jury was that the case was about whether Blackwood violated the court order "specifically" on October 30, which clearly identified the act the State was relying on. Further, the stipulation that was read to the jury about Blackwood's past convictions clearly identified October 30, not the entire charging period, as the relevant date of the offense. The State's definitive statement in rebuttal and the stipulation demonstrate that the State sufficiently elected the act to support the charge—Blackwood's conduct on October 30.

## CONCLUSION

Because the State effectively elected to rely on the October 30 conduct, no unanimity instruction was required and no constitutional error occurred. Accordingly, we affirm.

No. 59691-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

LEE, J.