**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

|  |  |
|---|---|
| STATE OF WASHINGTON,<br><br>        Respondent,<br><br>        v.<br><br>CHRISTOPHER MARTIN MOLLER,<br><br>        Appellant. | No. 85282-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — A jury convicted Christopher Moller of one count of child molestation in the first degree of G.W., and four counts of unlawful possession of a firearm in the second degree. Moller challenges the child molestation conviction, arguing that (1) the trial court erred in giving a Petrich[1] unanimity jury instruction and thereby violated his constitutional rights; (2) trial counsel rendered ineffective assistance of counsel by failing to object to the Petrich instruction and seeking to admit into evidence an e-mail that described a previously unreported incident of alleged molestation; (3) the trial court erred by imposing a victim penalty assessment (VPA); and (4) the effect of cumulative errors warrants reversal.

---

[1] State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988).

In a statement of additional grounds (SAG) for review, Moller challenges the denial of his motion to dismiss the case based on the State's failure to disclose evidence and raises issues related to his convictions of unlawful possession of a firearm. We affirm Moller's convictions, but remand for the trial court to strike the VPA from Moller's judgment and sentence.

I

When G.W. was about two years old, her parents, Thomas Walker and Shannon Lane, separated. From the time she was in kindergarten until she was about 13 years old, G.W. lived full-time on Orcas Island with Walker. During that time, Walker was friends with Christopher Moller. Moller and Walker often visited at each other's homes on weekends and engaged in outdoor activities together, such as camping and boating.

In 2020, when G.W. was 17 years old and living with her mother in Bellingham, she disclosed for the first time two incidents of sexual misconduct perpetrated by Moller when she lived on Orcas Island with Walker. Specifically, G.W. reported that Moller entered a bathroom while she was sitting on the toilet, held up a camera, and asked her to spread her legs. G.W. described another occasion, when she was sitting on a couch between Walker and Moller, and Moller reached his hand underneath her dress and touched her vagina.

After G.W. reported the incidents to law enforcement, she agreed to allow a detective assigned to the case to impersonate her using her Facebook account to communicate with Moller and attempt to elicit incriminating information from him. Some months later, after Moller accepted G.W.'s friend request and sent her a message on Facebook, the detective obtained an intercept order from the superior court and began

-2-

to communicate with Moller, while pretending to be G.W. Moller did not expressly admit to molesting G.W. But in response to questions about whether Moller remembered touching G.W. in a sexual manner when she was a child, Moller did not deny doing so and expressed reluctance to discuss the matter online. Moller also made several incriminating statements revealing his sexual interest in G.W. when she was a child. Following his interaction with Moller, the detective applied for a search warrant and arrested Moller. Police officers found four firearms in a safe located in Moller's bedroom. Moller was prohibited from possessing firearms based on a prior conviction.

The State charged Moller with one count of child molestation in the first degree and four counts of unlawful possession of a firearm in the second degree.[2] Several witnesses testified during the five-day trial, including G.W., her parents, and law enforcement witnesses.

Relevant to the molestation charge, G.W. testified that Moller touched her on a "floral futon" at her father's house. While her father was sitting on her right side and Moller was on her left side, Moller took his hand away when he "picked up on" her discomfort. G.W. never discussed the incident with her father. On cross-examination, G.W. admitted that she had told law enforcement that her father saw Moller reach under her dress, and "told [Moller] to stop and to leave."[3] Defense counsel also elicited that G.W. said earlier that the touching happened on a couch, not a floral futon, and that Moller was sitting on her right-hand side.

---

[2] The trial court granted the State's motion during trial to amend the information, allowing the State to expand the charging period.

[3] G.W.'s father unequivocally denied that he saw Moller touch G.W. inappropriately.

Although G.W. previously confirmed that the two reported incidents were the only acts of abuse, right after the 2022 defense interview, G.W. disclosed a new, "third" incident to the prosecutor. The prosecutor said that G.W. described "another incident of touching" by Moller that happened on a day when Moller brought a cat that he kept for G.W. to her father's house.[4]

But on cross-examination, G.W. said she only remembered talking to the prosecutor about a "major inconsistent detail," and said she did not remember disclosing further abuse and had no memory of the incident itself. Based this testimony, defense counsel sought to admit exhibit 54, the prosecutor's e-mail reporting G.W.'s belated allegation, for impeachment purposes, because the evidence was relevant to G.W.'s credibility. The trial court admitted the evidence. When confronted with the e-mail, G.W. was unclear about whether the incident involving the cat was the same incident on the couch she initially disclosed, or a different occasion.

G.W. also admitted that, in a conversation over text message with the detective who was communicating with Moller over Facebook, she said that the molestation occurred at Moller's house. But, at trial, G.W. said that location was "not correct" and insisted that molestation happened only at her father's house.

At the close of the evidence, in accordance with the State's proposed instructions and the agreement of the defense, the court provided a Petrich instruction, requiring jury unanimity as to the specific act that supported the child molestation count. State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988). That instruction provides:

---

[4] Contrary to Moller's claim in reply that the "cat" incident involved no touching, the prosecutor expressly reported that G.W. "says [Moller] did touch her vagina."

The State alleges that the defendant committed acts of Child Molestation in the first degree on multiple occasions. To convict the defendant of Child Molestation in the First Degree, one particular act of Child Molestation in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Child Molestation in the First Degree.

The jury convicted Moller on all counts. Moller appeals.

II

In order to ensure that a defendant's right to jury unanimity is preserved, the trial court must properly instruct a jury when there is evidence of multiple distinct acts and the State has not clearly elected the act it relies on to support the charged crime. Petrich, 101 Wn.2d at 572. Moller does not contend that the Petrich unanimity instruction provided to the jury was an inaccurate statement of the law, but claims there was no factual basis for the instruction because G.W. "consistently" reported a single incident of molestation. Moller further contends that, by including the Petrich instruction, the trial court judge improperly commented on the evidence because the instruction "wrongly implied the court believed there was evidence that Moller molested G.W. on multiple occasions."

The Washington State Constitution prohibits judges from commenting on evidence. CONST. art. IV, § 16. Accordingly, judges may not convey personal feelings regarding the merits of a case nor resolve matters of fact. State v. Mansour, 14 Wn. App. 2d 323, 329-31, 470 P.3d 543 (2020). But so long as a jury instruction does no more than accurately state the relevant law, it is not a comment on the evidence. State v. Brush, 183 Wn.2d 550, 557, 353 P.3d 213 (2015).

This court reviews de novo whether a jury instruction is an improper comment on the evidence. Mansour, 14 Wn. App. 2d at 329. A trial court errs by giving an instruction unsupported by the evidence. State v. Hoffman, 116 Wn.2d 51, 111, 804 P.2d 577 (1991).

Contrary to Moller's argument, G.W.'s testimony was neither clear nor consistent and both parties interpreted her testimony as suggesting the possibility of more than one act of molestation. In his closing argument, Moller argued that G.W. referenced at least three separate acts of molestation: one at her father's house, one when Moller brought the cat for G.W. to play with, and one at Moller's house. Meanwhile, the State appeared to argue that G.W.'s testimony suggested at least two potential incidents of molestation.

G.W.'s testimony suggested that molestation occurred in different locations, on different items of furniture, and she provided different surrounding details and descriptions of how the incident ended. It was reasonable for both parties to construe the evidence as encompassing potential allegations of more than one act of molestation. The instruction was, therefore, relevant to and warranted by the evidence presented. See Kitchen, 110 Wn.2d at 409-11 (a court must issue a Petrich instruction in order to ensure that the right to jury unanimity is preserved when there is evidence of more than one act, in absence of a clear election). The instruction did no more than accurately state the law, and Moller does not assert otherwise. Also, the language of the instruction, which merely states that the prosecution "alleges" multiple acts, does not improperly convey the court's opinion about whether, and to what extent, the evidence supports the State's allegations.

The trial court did not err or improperly comment on the evidence by issuing a Petrich unanimity instruction.

III

Moller claims that trial counsel rendered constitutionally inadequate assistance when he failed to object to the Petrich instruction and sought admission of exhibit 54, the prosecutor's e-mail describing the allegation G.W. raised following the defense interview.

Both the federal and state constitutions guarantee the right to effective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017); U.S. CONST. amend. VI; CONST. art. I, § 22. To establish ineffective assistance, the defendant must establish " 'that counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.' " State v. Carson, 184 Wn.2d 207, 216, 357 P.3d 1064 (2015) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Counsel's performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Deficient performance prejudices the defense where there is a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." Kyllo, 166 Wn.2d at 862.

Reviewing courts are highly deferential, recognizing that counsel is strongly presumed to have exercised reasonable professional judgment. Carson, 184 Wn.2d at 216. "We must resist the temptation to substitute our own personal judgment for that of [the defendant's] attorney because 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " Carson, 184 Wn.2d at 220 (quoting Strickland, 466 U.S. at 689).

As explained, there was evidence to suggest that G.W. alleged more than one separate and distinct act of molestation. The Petrich instruction was therefore a reasonable measure to ensure jury unanimity. Moller cannot demonstrate that counsel performed deficiently by failing to object.

As to counsel's decision to seek admission of the prosecutor's e-mail, Moller points out that the evidence was hearsay and contends there was "no reasonable strategic basis" for counsel to supply the jury with "evidence of an alleged second act of molestation by Moller." But, regardless of whether any party had a basis to object to the evidence, there was an obvious strategic basis for defense counsel to introduce the e-mail. The evidence supported the defense's argument that G.W.'s allegations were inconsistent, contradictory, and evolving, and her testimony was insufficiently reliable to establish, beyond a reasonable doubt, that molestation occurred. According to the e-mail, G.W. provided several specific details about an incident of molestation, including details about the cat that Moller kept for her, where G.W. was and what she wore, where G.W.'s father was sitting, Moller's reaction and how he threatened to leave with the cat when she pulled away, how Moller was holding the cat when he left, and her

emotional reaction and belief that she never saw the cat after this incident. It was relevant to G.W.'s credibility that, notwithstanding this level of detail, less than a year later at trial, G.W. maintained that she did not recall the incident or remember revealing any additional misconduct to the prosecutor. Because the defense strategy was reasonable in light of the evidence and the e-mail supported its strategy, counsel's decision to seek admission of the evidence was not objectively unreasonable.

IV

At sentencing, the court imposed the required VPA but waived all other legal financial obligations. The legislature subsequently enacted RCW 7.68.035(4), which prohibits the court from imposing the VPA "if the court finds that the defendant, at the time of sentencing, is indigent." Amendments to cost statutes apply prospectively to cases still pending on appeal. See State v. Wemhoff, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022).

At sentencing, the court found Moller indigent. The State concedes that the recent amendment requires that the VPA must be stricken. We accept the State's concession and remand to strike the VPA from Moller's judgment and sentence.

V

Moller argues that cumulative error warrants reversal of his convictions. We disagree. "The cumulative error doctrine applies only when several trial errors occurred which, standing alone, may not be sufficient to justify a reversal, but when combined together, may deny a defendant a fair trial." State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). We remand to strike the VPA because of a subsequent

legislative amendment, not trial court error. Because Moller fails to establish multiple trial court errors, the cumulative error doctrine does not apply.

## VI

Moller makes three arguments in a pro se SAG for relief. We address each in turn.

## A

Moller first challenges the trial court's denial of his motion to dismiss the charges based on governmental misconduct under CrR 8.3(b).

During the testimony of the lead detective on the third day of trial, the defense (and the prosecutor) learned that, while communicating with Moller through Facebook, the detective simultaneously communicated with G.W. and her mother by text message. Because those text messages were not provided to the defense pretrial, the defense sought to dismiss the charges. The defense argued that the undisclosed text messages were exculpatory and impeaching because G.W. provided information to the detective that was inconsistent with her other statements. In particular, in response to the detective's question about whether Moller touched her at "[her] dad's or his house," G.W. responded, "his," even though she had previously alleged molestation occurred only at her father's house. And when asked about the color of the couch, G.W. responded "Floral [print] black and red green."

After considering the transcript of the messages and extensive arguments by both parties, the court denied the motion to dismiss, noting that while the undisclosed messages were relevant for impeachment, the defense was not actually prejudiced by

the belated disclosure.  The court required the State to make G.W. available and she was reexamined by both parties the next day. [5]

Moller provides a lengthy recitation of the procedure related to the motion to dismiss, the arguments raised by counsel below, and the trial court's ruling.  But he provides little explanation for the basis of his challenge on appeal.  He claims that despite finding a violation of the State's affirmative duty to disclose favorable evidence under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the trial court made a "biased decision" to deny the motion.  And Moller asserts that the court erred because G.W. had a motive to fabricate the allegations to further her "goal" of eliminating contact with her father.

CrR 8.3(b) provides that the trial court "may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect[s] the accused's right to a fair trial."  Dismissal of charges under CrR 8.3(b) is an " 'extraordinary remedy.' "  State v. Rohrich, 149 Wn.2d 647, 658, 71 P.3d 638 (2003) (quoting State v. Baker, 78 Wn.2d 327, 332, 474 P.2d 254 (1970)).

To prevail on a CrR 8.3(b) motion to dismiss, a defendant must show by a preponderance of the evidence (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial.  State v. Kone, 165 Wn. App. 420, 432-33, 266 P.3d 916 (2011).  A showing of simple mismanagement is sufficient, State v. Blackwell, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993), and the defendant must show

_____

[5] The court also indicated that it would require the State to make G.W.'s father available for further cross-examination if the defense made that request and would consider a request for a continuance or other accommodation.

actual, not merely speculative, prejudice. Kone, 165 Wn. App. at 433. "We review the trial court's decision to deny a motion to dismiss under CrR 8.3 for abuse of discretion, that is, whether the decision was manifestly unreasonable, based on untenable grounds, or made for untenable reasons." Kone, 165 Wn. App. at 433.

The court concluded that the defense was not actually prejudiced because timely disclosure would not have changed the defense strategy and because the defense learned of G.W.'s additional inconsistent statements in time to address them at trial. The trial court further observed that several inconsistencies became apparent only after G.W. testified and that all of the inconsistent statements provided more support for the defense's strategy. Moller fails to engage with the trial court's reasoning, or explain how G.W.'s alleged motive to falsely accuse him affected his ability to impeach her with inconsistent statements. In short, Moller fails to demonstrate that the trial court's decision resulted from bias or an abuse its discretion.

B

Second, as he argued below in a pretrial motion to dismiss, Moller claims the State failed to establish that he was previously orally advised of the firearms prohibition that resulted from his 1997 domestic violence conviction as required by RCW 9.41.047(1)(a). As a result, he asks this court to "dismiss all four counts" of unlawful possession of a firearm.

RCW 9.41.047(1)(a) requires:

> At the time a person is convicted . . .  the court shall notify the person, <u>orally and in writing</u>, . . . that the person may not possess a firearm unless the person's right to do so is restored by the superior court that issued the order.

(Emphasis added.)

-12-

A defendant "may, prior to trial, move to dismiss a criminal charge due to insufficient evidence establishing a prima facie case of the crime charged." The trial court must grant the motion "if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." CrR 8.3(c)(3). The trial court views all the evidence and must make all reasonable inferences in the light most favorable to the State. CrR 8.3(c)(3).

In his motion filed below, Moller acknowledged that the State provided several documents, all bearing his signature, relevant to his 1997 conviction: a guilty plea statement, judgment and sentence, and "Notice of Ineligibility to Possess Firearms." But he claimed that none of the documents established that the court, in 1997, provided an oral advisement regarding firearm rights. In an accompanying declaration, Moller stated, among other things, that he did not "recall" that the court mentioned the loss of firearm rights during the plea colloquy.[6]

To the extent that Moller challenges the trial court's failure to grant his motion to dismiss, the record does not allow us to evaluate his claim. The record does not include the State's response to the motion to dismiss or the trial court's ruling. And the exhibits admitted to establish Moller's conviction and ineligibility to possess firearms are not a part of the record on review. See RAP 9.6(a); State v. Drum, 168 Wn.2d 23, 38 n.3, 225 P.3d 237 (2010) (because the appellant bears the burden of perfecting the record, the failure to designate necessary materials precludes appellate review).

---

[6] Moller did not mention anything that transpired at sentencing when the court entered the conviction and it does not appear that he supplied a transcript of that proceeding.

And inasmuch as Moller attempts to appeal his current firearms convictions by challenging the validity of the underlying 1997 domestic violence conviction that served as the predicate offense, because the predicate conviction is long final, a personal restraint petition is the appropriate mechanism to challenge it. See In re Pers. Restraint of Kennedy, 200 Wn.2d 1, 12, 513 P.3d 769 (2022) (collateral relief from a conviction is an extraordinary remedy that seeks to disturb a final judgment). In general, a personal restraint petition must be filed within one year after a conviction becomes final, unless the judgment is facially invalid or was entered without competent jurisdiction, or the petition is based solely on one or more of the exceptions to the time bar as set forth in RCW 10.73.100. See RCW 10.73.090; In re Pers. Restraint of McKiearnan, 165 Wn.2d 777, 781, 203 P.3d 375 (2009).

C

Third, citing New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), Moller asserts, without further elaboration, that his misdemeanor domestic violence conviction of assault in the fourth degree cannot serve as a predicate offense for an unlawful possession of a firearm conviction because "second amendment rights in historical context prohibits the use of a misdemeanor as a predicate offense."

RCW 9.41.040(2)(a)(i)(B) and (b) makes it a class C felony for a person previously convicted of assault in the fourth degree against a family or household member to possess a firearm.

In Bruen, the Supreme Court considered and struck down New York's regulatory licensing program that required applicants to prove that they had "proper

cause" to carry a handgun in public. 597 U.S. at 11-12. The Court held that the Second and Fourteenth Amendments "protect the right of an ordinary, law-abiding citizen to possess a handgun" in the home, and in public, for self-defense. <u>Bruen</u>, 597 U.S. at 8-10.

The Supreme Court's decision in <u>Bruen</u> did not question the government's authority to regulate firearm possession based on prior convictions, nor did it endorse a distinction between felony and misdemeanor offenses. Recently, we rejected the argument that RCW 9.41.040 is unconstitutional because it criminalizes possession of firearms by some individuals convicted of nonviolent felonies. <u>State v. Ross</u>, 28 Wn. App. 2d 644, 652-53, 537 P.3d 1144 (2023). As we observed in <u>Ross</u>, the majority opinion in <u>Bruen</u> "fully embraced" the Court's earlier decisions that "the Second and Fourteenth Amendments protect the right of "ordinary, <u>law-abiding</u> citizens to possess a handgun in the home for self-defense." <u>Ross</u>, 28 Wn. App. at 649 (quoting <u>Bruen</u>, 597 U.S. at 9). The Court's repeated focus on the Second Amendment rights of "law abiding citizens" does not suggest that the government is limited to regulating the possession of firearms based on only certain categories of criminal history. <u>See</u> <u>Bruen</u>, 597 U.S. at 15, 26, 29, 30, 31, 38, 60, 70, 71.

Because <u>Bruen</u>, the only authority cited, does not support Moller's contention that RCW 9.91.040 is unconstitutional and because Moller does not otherwise explain the "historical context" that limits regulation of firearms based on criminal history, he fails to overcome the presumption that the statute is constitutional. <u>See</u> <u>City of Seattle v. Evans</u>, 184 Wn.2d 856, 861-62, 366 P.3d 906 (2015) (we presume that statutes are constitutional and the challenger bears the burden to demonstrate unconstitutionality);

see also State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) ("Parties raising constitutional issues must present considered arguments to this court.  We reiterate our previous position: 'naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " (internal quotation marks omitted) (quoting In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986))).

We affirm Moller's convictions, but remand for the trial court to strike the VPA from Moller's judgment and sentence.

Mann, J.

WE CONCUR:

Chung, J.

Coburn, J.